# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**CARMEN LEYBA,**

        **Plaintiff,**

**v.**                                                      **CIV. No. 97-1186 JP/RLP**

**CITY OF SANTA FE,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

On July 27, 1999, Defendant filed a Motion for Summary Judgment on Plaintiff's Claim for Spoliation of Evidence (Doc. No. 72). After carefully reviewing the briefs, the pleadings, and the applicable law, I conclude that Defendant's motion should be granted.

## I. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary

judgment by resting upon the mere allegations or denials of his or her pleadings. *Id*.

## II.     BACKGROUND

In August 1989, the Defendant City of Santa Fe ("City") employed Plaintiff Carmen Leyba ("Leyba") as an emergency dispatcher. The City later promoted her to emergency dispatcher supervisor. At some time, Ms. Leyba also served as Acting Communications Manager. In 1995, Ms. Leyba applied for the position of Communications Center Manager. Instead of selecting Ms. Leyba for the position, the City promoted Thomas Williams. Ms. Leyba was the second choice for the promotion. (Salazar Depo. p. 57, Ex. A. to Leyba's Resp. to Mo. for Sum. Judg. on Leyba's Breach of Contract Claim.)

On April 26, 1995, Ms. Leyba wrote a grievance memo to the Administrative Services Director and the Personnel Director under Rule 4.61 and Rule 8 of the City's personnel manual. Ms. Leyba claimed that Mr. Williams did not meet the minimum qualifications for Communications Center Manager and that she should have been selected because she was the number two candidate.

On May 5, 1995, Leyba filed an EEOC charge of discrimination based on the City's failure to promote her to Communications Center Manager. Leyba alleged that the City discriminated against her on the basis of her sex and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

Ms. Leyba argues that the City retaliated against her for filing the grievance memo and the EEOC charge of discrimination by creating an intolerable workplace, which led to her constructive discharge in October 1995. In February 1996, August 1996, and November 1996, Ms. Leyba applied to the City for a position as dispatcher, but the City did not offer her a job. On

December 24, 1996, Ms. Leyba filled a second EEOC charge of discrimination. She alleged that the City had retaliated against her for filing her first EEOC complaint by not hiring her for the position of dispatcher, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Ms. Leyba filed suit on August 5, 1997, in state court. On September 4, 1997, the City removed this action to federal district court. Ms. Leyba alleges nine counts against the City: Count I for discrimination under the New Mexico Human Rights Act; Count II for retaliation under the New Mexico Human Rights Act; Count III for discrimination under Title VII; Counts IV and V for retaliation under Title VII; Count VI for breach of contract; Count VII for Breach of Implied Covenant of Good Faith and Fair Dealing; Count VIII for punitive damages; and Count IX for intentional spoliation of evidence. (First Amended Compl.)

## III.    DISCUSSION

The City argues that Ms. Leyba's claim for intentional spoliation of evidence should be dismissed because the New Mexico Tort Claims Act ("NMTCA"), N.M. STAT. ANN. § 41-4-1, *et seq.* (Michie 1996), does not waive immunity for claims against governmental entities for intentional spoliation of evidence and because Ms. Leyba has failed to submit evidence creating a genuine issue of material fact regarding this claim. Ms. Leyba essentially concedes that her claim for intentional spoliation of evidence is barred by the NMTCA, s*ee* Plaintiff's Resp. at 7 ("The State of New Mexico's Tort Claims Act does not have a specific exemption for the claim of intentional spoliation of evidence."). Nevertheless, Ms. Leyba contends that I should now impose sanctions for the City's intentional destruction of documents or, in the alternative, I should permit her to file a separate motion for sanctions although the motion deadline has passed.

**A.     The NMTCA bars Ms. Leyba's claim of intentional spoliation of evidence**

Under the NMTCA, a governmental entity is granted immunity from liability for all torts except those enumerated in N.M. STAT. ANN. § 41-4-5 through § 41-4-12.  *See* N.M. STAT. ANN. § 41-4-4 (A.).  The City of Santa Fe is a governmental entity.  *See* N.M. STAT. ANN. § 41-4-2 (B.).  Although the Supreme Court of New Mexico recognized the tort of intentional spoliation of evidence in 1995, *see Coleman v. Eddy Potash, Inc.* 120 N.M. 645, 649, 905 P.2d 185, 189 (1995), the New Mexico Legislature has declined to waive immunity for this tort under the NMTCA.  *See* N.M. STAT. ANN. § 41-4-5 through § 41-4-12.  Therefore, the City is immune from liability for Ms. Leyba's claim of intentional spoliation of evidence.  *See Begay v. State*, 104 N.M. 483, 487, 723 P.2d 252, 256 (Ct.App. 1985) ("If no specific waiver of immunity can be found in the Tort Claims Act, plaintiffs' complaint must be dismissed."); *see also Amirault v. City of Roswell*, No. 96-2181, 1997 WL 428691, at * 3 (10th Cir. July 31, 1997) ("Since the City is immune from suit [under the NMTCA] for the self-inflicted injuries sustained by Amirault, it follows that it is also immune from suit for spoliation of evidence."); *Phillips v. City of Albuquerque*, Civ. No. 97-1324 JP/LFG, slip op. at 2 (D.N.M. filed June 11, 1998) (dismissing plaintiff's claim of spoliation of evidence because it is not actionable under the NMTCA); *Martinez v. City of Albuquerque*, Civ. No. 96-323 JP/JHG, slip op. at 3 (D.N.M. filed May 26, 1998) ("[T]he State of New Mexico has not waived its sovereign immunity to [the spoliation of evidence] claim."); *Scott v. City of Albuquerque*, Civ. No. 94-0786 WWD/DJS, slip op. at 1 (D.N.M. filed November 14, 1997) (Deaton, J.) (holding that the NMTCA does not waive immunity for spoliation of evidence).

### B. Ms. Leyba has not submitted evidence of intentional spoliation of evidence sufficient to create a genuine issue of material fact

Ms. Leyba's spoliation of evidence claim should also be dismissed because she has failed to create a genuine issue of fact regarding the City's destruction, mutilation, or significant alteration of potential evidence with the intent to disrupt or defeat Ms. Leyba's lawsuit. *See Coleman*, 120 N.M. at 649, 905 P.2d at 189 (stating the elements of a spoliation of evidence claim). Although Ms. Leyba has cited to the deposition testimony of numerous individuals where they discuss documents that the City claims are lost or missing, these citations to the record do not support Ms. Leyba's contention that she "has uncovered evidence of intentional destruction of documents by the City which are relevant and material to the proof of Plaintiff's claims." (Plaintiff's Resp. at 9.) *See* Sandoval Depo., Ex. A at 56-59 (stating he was unable to find interview and ranking notes for temporary job application for Communication Manager; that he did not know of any litigation exception to City's rule that it destroys administrative and recruitment files after three years; that the City never asked him to preserve files regarding Carmen Leyba); Gutierrez' Depo., Ex. B at 27-28 (stating that she had kept files regarding complaints of gender discrimination during the winter of 1995 and left those file in her office when she was fired in September 1996; also stating that she did not retain personnel recruitment files for the permanent position of Communications Center Manager); Salazar Depo., Ex. C at 24-25 (stating that he met with all thirty-one dispatchers about Mike Halpin's reputation for being sexist and having a military style), at 139-41 (stating that he kept notes of daily activities in 1994 and 1995 in a chemistry lab book, which he could not find because of having moved five times in four years and having kept things in storage facilities); Rodriguez Depo., Ex. D at 91-92

(acknowledging that one or both of recruitment files [apparently for the Communications Center Manager position] were missing), at 55-56 (stating that no one had ever found the recruitment file for the temporary position of Communications Center Manager); Gurule Depo., Ex. E. at 97 (stating it is very important to keep records for purpose of responding to EEOC complaints); Rael de Garcia Depo., Ex. F at 52-58 (discussing a report that apparently addressed the complaints and concerns of women in the division, which Ms. Rael de Garcia stated should have been in her file, provided to Mr. Sanchez and other staff members, and on her computer's hard drive); Blea Depo., Ex. G at 61 (stating he knew of no protocol for preserving tapes of computer information that might be needed in pending litigation), at 66 (stating he was never asked to preserve computer files for this case), at 83-86 and 122-25 (stating that after Ms. Gutierrez was fired, her computer was transferred to Ms. Rael de Garcia and then wiped clear after Ms. Rael de Garcia left the City, and no one saved the files on the computer), at 127-29 (stating he found no responsive documents on the computers of Ms. Gurule or Kristine Kuebli).

At best, then, the evidence Ms. Leyba submitted demonstrates the City was negligent in failing to retain and keep track of relevant documents and in not implementing a policy to ensure that documents regarding pending litigation are not destroyed. Although the City's actions are sloppy and opprobrious, Ms. Leyba has not submitted admissible evidence that the City has acted intentionally to thwart her lawsuit by destroying documents. Hence, because Ms. Leyba has failed to create a genuine issue of material fact regarding the City's destruction, mutilation, or significant alteration of potential evidence with the intent to disrupt or defeat Ms. Leyba's lawsuit, her claim for intentional spoliation of evidence should be dismissed.

### C.    Sanctions are not appropriate

Ms. Leyba contends "[t]he City's wrongdoing is of such magnitude that striking its defenses that assert that it did not discriminate against Plaintiff because of her gender is the only sanction which will adequately remedy the harm done to Plaintiff." (Plaintiff's Resp. at 9.) Although the motion deadline in this case expired on July 29, 1999, Ms. Leyba argues that the imposition of sanctions, or the granting of an extension of the motion deadline to file a motion for sanctions, is appropriate because the City did not raise the NMTCA as a defense when Ms. Leyba sought to amend her complaint to include the spoliation of evidence claim.

This argument is meritless. The City did not forfeit its right to request dismissal of Ms. Leyba's spoliation of evidence claim merely because the City consented to Ms. Leyba's amending her complaint. Leave to amend is freely granted under the FED. R. CIV. P. 15(a), and Ms. Leyba almost certainly would have been permitted to amend her complaint, even if the City had objected to Ms. Leyba's amending her complaint to include a claim for the intentional spoliation of evidence. The City's failure to oppose the amendment of Ms. Leyba's complaint neither entitled Ms. Leyba to belatedly request sanctions in her Response to the City's Motion for Summary Judgment or to receive an extension of the expired motion deadline in order to file a new motion for sanctions.

Even if Ms. Leyba's request for sanctions was timely, I would deny it on the ground that she has failed to produce evidence that the City intentionally destroyed documents, as discussed *supra*. While the City has displayed a cavalier attitude toward the retention of documents that might impinge on this lawsuit, and although I do not commend the City's actions, Ms. Leyba simply has not produced evidence of intentional wrongdoing that would justify sanctions.

7

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's Claim for Spoliation of Evidence (Doc. No. 72) is GRANTED and Plaintiff's claim for intentional spoliation of evidence should be dismissed with prejudice.

_____
**UNITED STATES DISTRICT JUDGE**